**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Public Integrity Alliance Incorporated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Ken Bennett, in his official capacity as Secretary of State for the State of Arizona,<br><br>Defendant. | No. CV-14-01044-PHX-NVW<br><br>**ORDER** |

Before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4). The Motion was argued on May 29, 2014. The Motion will be denied because it is bared by laches, as Plaintiffs' delay in seeking injunctive relief is unreasonable and prejudicial. A preliminary injunction will also be denied because it is unnecessary to prevent any harm to the Plaintiffs in the 2014 primary election. This order states the Court's findings of fact and conclusions of law pursuant to Rule 52(a)(2) of the Federal Rules of Civil Procedure.

**I.      STATUTORY BACKGROUND AND THE PARTIES**

This application for a preliminary injunction is brought by Arizona Public Integrity Alliance Incorporated and four Maricopa County voters who are members of the Republican Party. Defendant Arizona Secretary of State Ken Bennett is the state officer responsible for administering Arizona elections. Party-affiliated candidates seeking to be

placed on the primary election ballot for statewide office are required to file nomination petitions with the Secretary of State. *See* A.R.S. §§ 16-311, 16-314. Plaintiffs seek to enjoin enforcement of part of the statute that sets the minimum number of signatures on the nominating petitions. A.R.S. § 16-322(A)(1). Plaintiffs do not challenge the requirement that the petitions be signed by at least one-half of one percent of the total voter registration of the candidate's party in the state. *Id*. A Republican candidate for this election needs 5,660 signatures.

Plaintiffs do challenge the requirement of signatures of at least one-half of one percentage of the voter registration of the party of the candidate in at least three of the fifteen counties in the state. *Id.* The number of signatures for the county-distribution requirement is included within the total state-wide signature requirement. Due to variations in county population, the absolute number of signatures to qualify a county varies from county to county, though the percentage is the same for every county. *Id*.

Plaintiffs contend this minimum county-distribution requirement violates the Equal Protection Clause of the Fourteenth Amendment. They say it dilutes signatures from more populous counties and enhances the value of signatures from less populous counties. For example, for Greenlee County, which has only 1,115 registered Republican voters, six signatures suffice toward the three-county requirement. Plaintiffs object that each one of the six Republican signatures from Greenlee County satisfies 1/6 of one-third, or 5.6%, of the total county-based signature requirement. In contrast, 3,553 signatures are needed for Maricopa County, which has 710,487 registered Republicans. Plaintiffs object that for Maricopa County, each of the 3,553 signatures satisfies 1/3,553 of one-third, or less than .01%, of the total county-distribution signature requirement. Again, these are Plaintiffs' computations and arguments.

The individual plaintiffs are residents of Maricopa County. They all signed primary nomination petitions this election season, and some of their candidates used Maricopa County as one of the three qualifying counties in their nomination petition. The individual plaintiffs claim that, as residents of Arizona's most populous county, the

county-distribution signature requirement has diminished the relative value of their signatures as compared to the signatures of residents of less inhabited counties. They seek to enjoin application of that requirement for candidates in the 2014 primary election.

## II. A PRELIMINARY INJUNCTION IS BARRED BY PLAINTIFFS' UNREASONABLE AND PREJUDICIAL DELAY

Nomination petitions for the primary election ballot had to be filed between April 28 and May 28, 2014. Challenges to the sufficiency of nomination petitions were due by June 11, 2014, and early primary voting begins on July 28, 2014. Plaintiffs began looking seriously at the constitutionality of the county-distribution requirement in December 2013. They gave notice to the State on May 2, 2014, that they intended to seek an injunction, but they did not do so until May 15, 2014. The Court set accelerated briefing and a hearing for May 29, 2014.

Laches—unreasonable and prejudicial delay—requires denial of injunctive relief, including preliminary relief. "In the context of election matters, the laches doctrine seeks to prevent dilatory conduct and will bar a claim if a party's unreasonable delay prejudices the opposing party or the administration of justice." *Lubin v. Thomas*, 213 Ariz. 496, 497 ¶ 10, 144 P.3d 510, 511 (2006) (holding that the laches doctrine applies to actions challenging candidate nomination petitions); *Beltran v. Razo*, 163 Ariz. 505, 507, 788 P.2d 1256, 1258 (App. 1990); *Sotomayor v. Burns*, 199 Ariz. 81, 83 ¶ 6, 13 P.3d 1198, 1200 (Ariz. 2000). Such delay "strains the quality of decision making and is ultimately unfair to all involved." *Mathieu v. Mahoney*, 174 Ariz. 456, 460, 851 P.2d 81, 85 (1993).

No relief can be granted that would delay the printing of the ballots. *Lubin*, 213 Ariz. at 497 ¶ 10, 144 P.3d at 512. A plaintiff's delay can "prejudice the administration of justice by compelling the court to steamroll through delicate legal issues in order to meet the ballot printing deadlines." *Id*. The defendant is also entitled to reasonable time to consider and develop his case. *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 525, 821 P.2d 181, 187 (App. 1991). That includes "the opportunity to develop and present their own evidence, hire an expert, or prepare their cross-examination." *Mathieu*, 174 Ariz. at 459-60, 851 P.2d at 84-85.

- 3 -

1  Plaintiffs' delay until two weeks before the Secretary begins signature validation
2  is unreasonable. The statue they challenge is not new. Earlier iterations of the county-
3  distribution signature requirement have existed since statehood. *See* Ariz. Sess. Laws
4  1912, 1st. S.S., Ch. 84, § 6. The present version has been in effect since 1980. *See* Ariz.
5  Sess. Laws 1979, Ch. 209, §§ 2 to 5. Plaintiffs say they delayed their filing because it
6  took a long time to obtain Plaintiffs' certified voting records. As they conceded at oral
7  argument, they could have attested in sworn affidavits that they are qualified electors.
8  The time it took to obtain certified voting records does not justify a delay.

Plaintiffs also say they had no cause to discover the county-distribution signature requirement before they signed this year's petitions. But Plaintiffs' counsel acknowledged they began looking seriously at the constitutionality of the statute in December 2013. Had Plaintiffs filed suit promptly, a motion for preliminary injunction could have been briefed and decided without unreasonable burden on the Defendant, the Court, and the election process.

Defendant contends Plaintiffs' unwarranted delay prevented him from defending against the injunction. He does not respond on the merits for inability to marshal facts and authorities in the short time left. That is plainly true. Plaintiffs' response that Defendant did not need time to prepare a response because Plaintiffs' case is obviously meritorious is not a valid response to laches. A defendant and the court are entitled to a meaningful response precisely to determine the strength of the case. Plaintiffs' unreasonable delay in filing this Motion unduly prejudiced the State's ability to defend on the merits.

### III. A PRELIMINARY INJUNCTION WOULD NOT PREVENT ANY HARM IN THE 2014 ELECTIONS

An injunction may be granted only when the movant shows that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). A preliminary

injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (per curiam) (citation omitted).

When Plaintiffs filed this action and when it was heard on May 29, 2014, it was extremely unlikely that a preliminary injunction would have prevented any injury to the Plaintiffs in the 2014 elections. The nomination petition filing period ended on May 28, 2014, and the Secretary had qualified all the primary candidates whose nominating petitions they signed. In doing so, the Secretary certified that they all satisfied the county-distribution signature requirement.[1] The time for private parties to bring litigation to challenge the sufficiency of the signatures was June 11, 2014. That date passed and no candidate supported by Plaintiffs has been challenged. Those candidates' presence on the primary election ballot is certain. Plaintiffs have not shown any harm to be avoided by preliminary injunctive relief.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 4) is denied.

Dated this 23rd day of June, 2014.

_____
Neil V. Wake
United States District Judge

---

[1] Collectively, the individual plaintiffs signed nominating petitions for the following Republican candidates: (1) Scott Smith, running for Governor, qualified by satisfying the county-based signature requirement in Greenlee, Maricopa, and Santa Cruise County; (2) Justice Pierce, running for Secretary of State, qualified by satisfying the county-based signature requirement in Graham, Maricopa, and Yuma County; (3) Mark Brnovich, running for Attorney General, qualified by satisfying the county-based signature requirement in Coconino, Pinal, and Yavapai County; and (4) Wil Cardon, running for Secretary of State, qualified by satisfying the county-based signature requirement in Coconino, Maricopa, and Pinal County.